Joseph **KONIKOV**, Plaintiff,

v.

**ORANGE COUNTY, FLORIDA, Joel D. Hammock, Jim Powers, Robert Burns, Robert High, Defendants.**

No. 6:02–CV–376–ORL28JGG.

United States District Court,
M.D. Florida,
Orlando Division.

July 28, 2003.

John T. Stemberger, Law Offices of John Stemberger, Orlando, FL, Frederick H. Nelson, Law Offices of Frederick H. Nelson, P.A., Altamonte Springs, FL, Theodore C. Hirt, Tamara Ulrich, U.S. Dept. of Justice, Federal Programs Branch, Civil Division, Washington, DC, Diane Kelleher, U.S. Department of Justice Civil Division, Washington, DC, for Plaintiff.

Rebecca S. Smith, Orange County Attorney's Office Litigation Section, Orlando, FL, Gary M. Glassman, Law Office of Gary M. Glassman, Lake Buena Vista, FL, for Defendants.

Temple Fett Kearns, Shutts & Bowen LLP, Ft. Lauderdale, FL, Anthony R. Picarello, Roman P. Storzer, Derek L. GAubatz, The Becket Fund for Religious Liberty, Washington, DC, for Amicus.

Theodore C. Hirt, Thomas E. Caballero, U.S. Dept. of Justice Federal Programs Branch, Civil Division, Washington, DC, for Interested–Party.

## ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause comes before the Court on Defendants' Motion to Exclude Plaintiff's Expert Witnesses Stanley B. Price, Esq., Rabbi Immanuel Schochat, and Rabbi Eliyahu Touger (Doc. No. 128, filed February 24, 2003).

The United States Magistrate Judge has submitted a report recommending that the motion be granted in part and denied in part.

After a review of the record in this matter, Plaintiff's Objections to Report and Recommendation Related to Defendants' Motion to Exclude Plaintiff's Experts (Doc. No. 197, filed June 9, 2003), and Defendant's Response (Doc. No. 198, filed June 23, 2003), the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation. Therefore, it is **ORDERED** as follows:

1. That the Report and Recommendation filed May 29, 2003 (Doc. No. 189) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Defendants' Motion to Exclude Plaintiff's Expert Witnesses Stanley B. Price, Esq., Rabbi Immanuel Schochat, and Rabbi Eliyahu Touger (Doc. No. 128) is **GRANTED** in part and **DENIED** in part.

3. Plaintiff's expert, Stanley B. Price shall be excluded.

4. Plaintiff's experts Rabbi Schochet and Rabbi Touger shall be permitted to testify as to definitions of relevant Hebrew and Yiddish terms, and to testify as to the prayers and practices of the Chabad Hassidim.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at a hearing on May 7, 2003 on the following motion:

**MOTION:** DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESSES STANLEY B. PRICE, ESQ., RABBI IMMANUEL SCHOCHAT, AND RABBI ELIYAHU TOUGER (Doc. No. 128)

**FILED:** February 24, 2003

**REFERRED:** April 10, 2003 (Doc. No. 166)

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

## I. THE LAW

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court set forth the following factors which are to be considered in determining the reliability of scientific expert testimony:

1) whether the expert's technique or theory can be or has been tested;

2) whether the technique or theory has been subject to peer review and publications;

3) the known or potential rate of error of the technique or theory when applied;

4) the existence and maintenance of standards and controls; and

5) whether the technique or theory has been generally accepted in the scientific community.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). When the expert is testifying as to general principles rather than their application to the facts of the case, Rule 702 requires the following:

1) the expert be qualified;

2) the testimony address a subject matter on which the fact finder can be assisted by an expert;

3) the testimony be reliable; and

4) the testimony "fit" the facts of the case.

*Id.* The *Daubert* factors may be applied not only to "scientific" testimony, but to all expert testimony. *Kumho Tire Company v. Carmichael,* 526 U.S. 137, 138, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

It is not enough that a witness is qualified in some way related to the subject matter at hand. Instead, the witness must have special knowledge about the discrete subject on which he or she is to testify. The function of an expert witness is not simply to draw conclusions, but rather to help the trier of fact understand the evidence and to determine issues of fact by imparting to the trier of fact the benefit of the expert's specialized knowledge.

■■■ The United States Court of Appeals for the Eleventh Circuit has held that it would be inappropriate for a lawyer, as an expert witness, to testify before a jury about matters of domestic law (United States law). *United States v. Oliveros,* 275 F.3d 1299, 1307 (11th Cir.2001). In contrast to the proof of foreign law, *see* Fed. R.Civ.P. 44.1,[1] domestic law is properly considered and determined by the Court. *Oliveros,* 275 F.3d at 1307. The Court's function is to instruct the jury on the law, and domestic law is not to be presented through testimony and argued to the jury as a question of fact. *Id.; see also Montgomery v. Aetna Casualty & Surety Co.,* 898 F.2d 1537, 1541 (11th Cir.1990) (a witness may not testify as to the legal impli-

---

1. Pursuant to Fed.R.Civ.P. 41.1, the Court, in determining foreign law, "may consider any relevant material or source, including testi-

mony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."

cations of conduct; the Court must be the jury's only source of law).

## II. DISCUSSION

### A. Stanley B. Price, Esq.

■ In this case, Price's expert report sets forth his proffered testimony. *See* Docket No. 129. In his report, Price offers two opinions. First, Price opines that the "Orange County ordinance was applied improperly against Rabbi Konikov." In support, Price states that the Orange County's code enforcement officials accused Rabbi Konikov of engaging in "religious" activities at his home, in violation of the ordinance, without any reliable support.

Second, Price concludes that the ordinance does not satisfy the four-part test in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) for determining whether a content neutral ordinance withstands constitutional scrutiny. Price purports to testify that under *O'Brien*, an ordinance withstands constitutional scrutiny if: 1.) it is within the constitutional power of the government; 2.) it furthers an important or substantial government interest; 3.) the government interest is unrelated to the suppression of free speech; and 4.) the incidental restriction on expressive conduct is no greater than is necessary to further the government interest. Price also seeks to testify regarding the parties' respective burdens in supporting or challenging the municipality's rationale under the Supreme Court decision of *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). Docket No. 129. Price purports to apply *O'Brien* and *Alameda Books* to the facts in this case in support of his conclusion that the ordinance here fails to satisfy the second and fourth prongs of *O'Brien*—that the ordinance is not supported by a substantial governmental interest, and that the ordinance is more than is necessary to further the governmental interest. Docket No. 129.

The Court should not permit plaintiff's expert, Stanley B. Price, Esq., to testify regarding the constitutionality of the Orange County ordinance, on its face or as applied. Price may be an expert in zoning and Florida land use law. However, plaintiff has made no showing that Price is qualified as an expert on the constitutional law issues involved in this case. More importantly, in the Eleventh Circuit, the judge is the jury's only source of law. The judge decides the content of the law, and instructs the members of the jury on the applicability of the law to the facts of the case. Price, an attorney, may not testify as to the constitutionality of a law, or as to the legal implications of conduct.[2] Defendants' motion to exclude Price as a witness should be granted.

### B. Rabbi Immanuel Schochat and Rabbi Eliyahu Touger

■ Defendants argue that this Court should prohibit plaintiff's experts, Rabbi Immanuel Schochet ("Rabbi Schochet") and Rabbi Eliyahhu Touger ("Rabbi Touger"), from defining certain Hebrew and Yiddish terms, and from explaining certain religious obligations of the followers of Lubavitch Chasidism. Defendants move to exclude the testimony of the Rabbis on two grounds. First, defendants claim that Rabbi Touger resides in Jerusalem, Israel, and that Rabbi Schochet resides in Ontario, Canada, making it financially difficult

---

2. At the May 7, 2002 hearing, the undersigned asked counsel for plaintiff why Price could not move to appear *pro haec vice* on behalf of Konikov, and to assist counsel in present the arguments relating to the constitutionality of the ordinance. Counsel stated that he was entitled to proceed by expert witness.

for the defendants to take their depositions. Defendants argue that plaintiff should have engaged a Rabbi in the State of Florida who could have testified to the same matters as Rabbi Touger and Rabbi Schochet.

This Court disagrees. The law does not permit defendants to select plaintiff's expert witnesses. Defendants have provided no reason why they could not have taken the Rabbis's depositions by telephone, video, or written questions.

Second, defendants challenge some but not all of the testimony proffered in the Rabbis's expert reports. While the defendants do not object to the Rabbis's testimony as to the definitions of certain Hebrew and Yiddish terms, they seek to prohibit the Rabbis from testifying as to how the federal, state, and local laws apply to Rabbi Konikov and his home. Defendants are most concerned about the following excerpt from Rabbi Touger's expert report:

> In truth, the entire question is difficult to understand. It is longstanding Jewish practice to gather in the homes of Rabbis—either because they cannot come to the synagogue or as a token of respect—for communal prayer. And yet no one would consider their private homes anything other than that. For example in my community in Jerusalem, there is a minivan three times a day in the home of Rav Ovadah Yosef, the former chief Rabbi of Israel. Now although he lives in an apartment building with 20+ families, no one considers his holding these prayer services as transforming his home into a synagogue.[3]

Defendants also express concern about the following excerpt from Rabbi Schochet's report:

The observance of communal prayer will not transform the private dwelling into a synagogue. That is to say, innate sanctity attaches itself to a designated place of worship and mandates a specific code of conduct in such ... but this would not apply to non-consecrated premises such as a private home even if "services" are held there: the private home retains its original character.

Rabbi Touger and Rabbi Schochet will not testify as to how the federal, state, and local laws apply to Rabbi Konikov and his home. That is not what plaintiff proposes that Rabbi Touger and Rabbi Schochet do. The plaintiff wants the Rabbis to explain the Chabad movement, obligatory aspects of its prayers, practices bearing on the movement's community center, and related ecclesiastical laws binding on Hassidim. *See* Docket No. 129. The proffered testimony is relevant to determining the extent to which the Orange County ordinance restricts Rabbi Konikov's ability to practice his Jewish faith. The testimony therefore imparts "other specialized knowledge" that will assist the trier of fact to understand the evidence or to determine a fact in issue. Accordingly, defendants' motion to exclude the testimony of Rabbi Touger and Rabbi Schochet should be denied.

## III. CONCLUSION

For the foregoing reasons, it is

**RECOMMENDED** that defendants' motion to exclude plaintiff's expert witnesses Stanley B. Price, Esq., Rabbi J. Immanuel Schochet, and Rabbi Eliyahu Touger [Docket No. 128] should be **GRANTED** in part and **DENIED** in part. It is

---

3. After much discussion, during the May 7, 2003 hearing, the defendants stipulated that they will not claim that communal prayer transforms Rabbi Konikov's home into a synagogue.

**FURTHER RECOMMENDED** that plaintiff's expert Stanley B. Price should be EXCLUDED. It is

**FURTHER RECOMMENDED** that plaintiff's experts Rabbi Touger and Rabbi Schochet should be permitted to testify as to definitions of relevant Hebrew and Yiddish terms, and to testify as to the prayers and practices of the Chabad Hassidim.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.